IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI

| | | |
|---|---|---|
| STEVEN D. KING, | ) | |
| | ) | |
| Plaintiff, | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| -vs- | ) | CASE NO.: C-1-01-802 |
| | ) | |
| CSX TRANSPORTATION, INC. | ) | Judge Herman J. Weber |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO CONTINUE TRIAL

NOW COMES the Plaintiff, Steven D. King, and hereby moves this Court to Continue the Trial in this matter and in support, thereof, states as follows:

1.  This matter is presently scheduled for a jury trial beginning on December 1, 2003. A final pretrial conference is scheduled for November 19, 2003.

2.  This lawsuit is brought pursuant to the Federal Employers Liability Act, *45 U.S.C. §51 et seq.*, for injuries sustained by the plaintiff during the course of his employment with the defendant, CSX Transportation. Plaintiff has alleged that on or about March 12, 1999, he sustained a knee injury while attempting to board locomotive in Corbin, Kentucky.

3.  Plaintiff remains an employee of the defendant, CSX Transportation, and retains seniority rights as a locomotive engineer. However, due to the injuries sustained in the above referenced incident plaintiff has not worked as a locomotive engineer for the defendant since January of 2000.

4.  At the request of CSX Transportation, the plaintiff was examined by orthopedic



surgeon, Dr. Thomas Bender. At that time, Dr. Bender performed a physical examination of the plaintiff and also reviewed the medical records from plaintiff's treating physicians.

    5.    Dr. Bender has provided deposition testimony in this case. Dr. Bender testified that he has treated locomotive engineers such as the plaintiff in the past, has an understanding of their job duties, and that it is his expert medical opinion that the plaintiff is capable of performing the regular and routine tasks of a locomotive engineer for CSX Transportation. (Bender Evidence Deposition, p.25-26). Dr. Bender further testified that his opinion regarding the plaintiff's physical capability of returning to work is not at variance with the restrictions placed upon the plaintiff by the treating physician, Dr. Larkin. (Bender Evidence Deposition, p.26-27).

    6.    Plaintiff intends to attempt to return to work as a locomotive engineer for the defendant, CSX Transportation. On November 5, 2003 plaintiff had a follow up appointment with his treating physician, Dr. John Larkin, who has released him to return to work with no restrictions as of November 5, 2003. (See attached release from Dr. Larkin). Plaintiff will need to be re-certified as a locomotive engineer and also re-qualify to operate locomotives over his territory before he will be allowed to resume all of his regular duties as a locomotive engineer.

    7.    Plaintiff requests that the trial date of December 1, 2003 be stricken and that the trial in this matter be continued for a period of 90 days to allow plaintiff sufficient time to become re-certified, re-qualified and attempt to return to his position of locomotive engineer for the defendant, CSX Transportation.

    8.    The plaintiff's ability (or inability) to return to work for the defendant will be one of the primary issues at trial in this mater. Moreover, the plaintiff's economic losses will be



either reduced or increased depending upon whether he is capable of returning to his locomotive engineer position with the defendant.

9. This request for a continuation of the trial is made in the interests of justice and not for the purposes of harassment or undue delay.

10. It is expected that a resolution of the issues related to plaintiff's ability to return to work will simplify the issues to be determined at trial and facilitate a potential settlement of this matter.

11. Counsel for the defendant, James O'Connell, has been consulted with respect to this motion. However, as of the time of this filing Mr. O'Connell has been unable to contact his client to determine whether this motion will be opposed.

WHEREFORE, the plaintiff respectfully requests that the Court grant this motion and continue the trial in this matter for a period of approximately 90 days.

Respectfully submitted,

/s/ Robert E. Harrington, Jr.
Robert E. Harrington, Jr.
Patrick J. Harrington
Daniel W. Pisani
Attorneys for Plaintiff


Harrington, Thompson, Acker & Harrington, Ltd.
310 South Michigan Avenue--Suite 2000
Chicago, Illinois 60604
(312) 922-8833



## CERTIFICATE OF SERVICE

I, Robert E. Harrington, Jr., hereby certify that on November 5, 2003 a copy of the foregoing **Motion to Continue Trial** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Robert E. Harrington, Jr.
Harrington, Thompson, Acker & Harrington, Ltd.
310 South Michigan Avenue
 Suite 2000
Chicago, Illinois 60604
(312) 922-8833



# mobius.
the continuum of healthcare

**JOHN J. LARKIN, M.D.**
**G. AVERY KONDIK, P.A.-C.**

320 Thomas More Parkway
Crestview Hills, KY 41017
(859) 426-4200
(859) 426-4206 fax

Patient: _Steve King_ Employer: _____

Diagnosis: _Bicep Tendinosis Left_ Next Visit: _____

Recommendations: _More_

## WORK STATUS

- ✓ MAY RETURN TO WORK WITH NO RESTRICTIONS ON _11/5/03_
- ___ UNABLE TO WORK UNTIL _____
- ___ CONTINUE CURRENT WORK RESTRICTIONS UNTIL _____
- ___ MAY RETURN TO WORK ON _____ WITH THESE RESTRICTIONS:

| Upper Extremity & Neck [ ] Left [ ] Right [ ] Both | No restrictions | None of this activity | Limited Restrictions | Lower Extremity & Back [ ] Left [ ] Right [ ] Both | No Restrictions | None of this activity | Limited Restrictions |
|---|---|---|---|---|---|---|---|
| Driving | | | Hrs/day: 1-2 3-4 5-6 7-8 | Standing | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Reaching | | | Hrs/day: 1-2 3-4 5-6 7-8 | Bending/Stooping/Crouching | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Climbing Ladders/Scaffold | | | Hrs/day: 1-2 3-4 5-6 7-8 | Climbing Ladders/Scaffold | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Operating Heavy Eqpmnt | | | Hrs/day: 1-2 3-4 5-6 7-8 | Driving | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Overhead Activity/Lifting | | | ___ lbs ___ times/day | Kneeling/Squatting/Crawling | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Lifting to Waist Height | | | ___ lbs ___ times/day | Operating Heavy Eqpmnt | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Pulling/Pushing | | | Hrs/day: 1-2 3-4 5-6 7-8 | Sitting/Sedentary | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Gripping | | | 5lb 10lb 15lb 25+lbs | Pull/Push/Carrying ___ pounds | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Continuous/Repetitive | | | Hrs/day: 1-2 3-4 5-6 7-8 | Lifting, Floor to Waist | | | ___ lbs ___ times/day |
| Sitting/Sedentary | | | Hrs/day: 1-2 3-4 5-6 7-8 | Twisting/Planting | | | |
| Other | | | | Continuous/Repetitive | | | Hrs/day: 1-2 3-4 5-6 7-8 |
| Other | | | | Other: | | | |

**Note: If restrictions cannot be met, patient should be off work.**

_John J. Larkin, M.D._     G. Avery Kondik, P.A.-C.     Date: 11/5/03



Page 2

```
1      ---
2  APPEARANCES
3  On behalf of Plaintiff:
4      PATRICK HARRINGTON, ESQ.
           of
5      Harrington Thompson, Acker &
       Harrington, Ltd.
6      310 S. Michigan Avenue
       Suite 2000
7      Chicago, Illinois 60604
8  On behalf of Defendant:
9      JAMES O'CONNELL, ESQ.
           of
10     Lindhorst & Dreidame
       312 Walnut Street
11     Suite 2300
       Cincinnati, Ohio 45202
12
13 ALSO PRESENT: Paul Jahn, videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1                    INDEX
2
3  EXAMINATION BY:  DIRECT CROSS REDIRECT RECROSS
4  MR. O'CONNELL       5
5  MR. HARRINGTON     28
6
7
8
9
10
11
12
13
14
15 EXHIBIT              MARKED
16
17
18       NO EXHIBITS MARKED
19
20
21
22
23
24
25
```

Page 3

```
1       STIPULATIONS
2      It is stipulated by counsel for the respective
3   parties that the deposition of THOMAS A. BENDER,
4   M.D., a witness herein, may be taken at this
5   time by the defendant as upon direct examination
6   and pursuant to the Ohio Rules of Civil
7   Procedure and notice to take deposition, all
8   other legal formalities being waived by
9   agreement; that the deposition may be taken in
10  stenotype by the Notary Public Reporter and
11  transcribed by her out of the presence of the
12  witness; that submission of the deposition to
13  the witness for examination and signature is
14  expressly waived.
```

Page 5

```
1           MR. JAHN: We're on the record,
2   Doctor.
3           THOMAS BENDER, M.D.,
4   a witness herein, of lawful age, having been
5   first duly sworn, as hereinafter certified, was
6   examined and testified as follows:
7           DIRECT EXAMINATION
8   BY MR. O'CONNELL:
9      Q. Let the record show that this is
10  the videotaped deposition of Dr. Thomas A.
11  Bender being taken by the defendant in this case
12  for presentation to the jury upon trial of this
13  case.
14          And let us begin, Doctor, by asking
15  you to state your name for the jury.
16     A. My name is Thomas Bender.
17     Q. What is your professional address?
18     A. My professional address is 3345
19  Whitfield Avenue, that's located in Cincinnati,
20  Ohio.
21     Q. And what is your profession?
22     A. I'm a Medical Doctor specializing
23  in orthopedic surgery.
24     Q. Are you authorized to practice
25  medicine in the State of Ohio?
```

2 (Pages 2 to 5)

LITIGATION SUPPORT SERVICES, INC.
Cincinnati, Ohio (513) 241-5605 / Dayton, Ohio (937) 224-1990



Page 22

1  incident?
2      A. Not that I can say with certainty,
3  although one is suspicious with the evolution of
4  similar patella femoral problems on the right
5  knee.
6      Q. And what were the similar patella
7  femoral problems on the right side?
8      A. In the exam of 2003 he has early
9  grading or popping under the right knee, which
10 is more pronounced on the knee, left knee, which
11 is claimed as a result of his employment.
12     Q. And in your opinion where did the
13 findings on the right knee originate from?
14     A. I feel that's a degenerative
15 condition.
16     Q. And if he had degenerative changes
17 occurring on the right knee in your opinion did
18 he have similar changes going on on the left
19 side?
20     MR. HARRINGTON: There will be an
21 objection.
22     A. I don't think I can answer that
23 question with certainty so we'll have to
24 withdraw that.
25     Q. What is Mr. King's present

Page 23

1  diagnosis and prognosis?
2      A. The patient currently is
3  symptomatic from -- from the patella femoral
4  joint in the left knee. He has a good
5  prognosis. He doesn't need additional surgery.
6  This is something in which he should be
7  encouraged to be active. He's had two minimally
8  invasive surgeries to address this condition.
9      Q. When you say minimally invasive
10 surgeries what do you mean by that?
11     A. Puncture wounds to look around the
12 internal contents of the knee. If you look at
13 the operative note or summaries not a tremendous
14 amount of anatomical alteration was accomplished
15 with either surgery.
16     Q. All right. Doctor, please assume
17 that Mr. King visited with his then attending
18 orthopedist, Dr. Larkin, in May of 2001 but did
19 not return to him with any knee complaints until
20 June of 2003, a little over two years later.
21     Is there any significance, in your
22 opinion, in that the patient did not see his
23 orthopedist for a period of about two years?
24     MR. HARRINGTON: Objection.
25     A. Yes, sir. It's evident that the

Page 24

1  patient did not have dysfunction or disability
2  in the knee for which he wanted to repeat or
3  engage treatment with a physician of record, Dr.
4  Larkin, for the -- his knee injury. Dr.
5  Larkin's function is what we call as the
6  physician of record. He is the person whom you
7  go back if you're having problems, and it's not
8  evident that Mr. King went back to Dr. Larkin
9  for a period of greater than 26 months.
10     Q. Have you reviewed Dr. Larkin's
11 physical exam findings from the patient's seeing
12 him in June of 2003?
13     A. Yes, sir, I have.
14     Q. And how do his findings at that
15 time compare with your findings from a short
16 time earlier in the same month?
17     A. We're within five degrees on range
18 of motion testing. He had mild patella femoral
19 crepitance on -- on the left knee exam, there
20 was no focal tenderness on the patella femoral
21 compression. Everything else about the knee is
22 normal, and Dr. Larkin also noted the mild
23 patella femoral crepitance on the right knee
24 with exactly the same range of motion. So
25 there's not a tremendous amount of dissimilarity

Page 25

1  between the exam of the left knee and right knee
2  by Dr. Larkin on this date of 6-16-03 --
3      Q. All right.
4      A. -- or whenever -- type 6-16-03.
5      Q. Doctor, what restrictions, if any,
6  would you place on Mr. King's current work
7  activities?
8      A. I think it's prudent for the man
9  not to kneel, squat or crouch on a sustained or
10 continuous basis. He may not be placed in a
11 position where he would be going up and down
12 ladders 15 or 20 feet or to an unprotected
13 height. I think that he may have some
14 difficulty with stair climbing on a repetitive
15 basis but he could certainly do this several
16 times a day.
17     Q. Have you examined and/or treated
18 locomotive engineers in the past?
19     A. Yes, sir, I have.
20     Q. And do you have an understanding of
21 their duties?
22     A. Yes, sir.
23     Q. Have you looked at the photographs
24 marked Defendant's Exhibits B 1 through B 10,
25 the photographs of the locomotive which Mr. King

Page 26

1  was involved with at the time of his accident?
2       MR. HARRINGTON: Objection.
3       A. Yes. Yes, sir, I have looked at
4  the pictures.
5       Q. In your opinion is Mr. King capable
6  of performing the regular and routine tasks of a
7  locomotive engineer?
8       A. Yes, sir.
9       Q. I'm going to ask you to assume that
10 Dr. Larkin has testified that he would limit Mr.
11 King in only these respects: no repetitive
12 kneeling, squatting and climbing, and I'll also
13 ask you to assume that Dr. Larkin did not define
14 repetitive as to number of times a task would be
15 performed.
16      In your opinion does your
17 assessment that you just gave us that Mr. King
18 is capable of resuming his work as a locomotive
19 engineer, in your opinion is your assessment at
20 variance with the restrictions put on the
21 patient by Dr. Larkin?
22      MR. HARRINGTON: Objection.
23 Assumes facts not in evidence.
24      A. No, sir. I reviewed Dr. Larkin's
25 deposition, I know Dr. Larkin wasn't very clear

Page 27

1  in terms of the frequency that he would allow
2  the patient to get on and off the engine. Other
3  than that I think my restrictions are comparable
4  to those as offered by Dr. Larkin, and I will go
5  further thinking this man can get off an engine
6  several times a day.
7       Q. And how about getting on an engine?
8       A. Getting on and off an engine
9  several times a day.
10      Q. All right. Without waiving any
11 objections that we might interpose to the
12 functional capacity evaluation carried out at
13 the direction of Dr. Larkin and to any
14 evaluation of that by Dr. Best I want to ask you
15 some questions about that functional capacity
16 evaluation.
17      First, have you had an opportunity
18 to review that?
19      A. Yes, I have.
20      Q. Do you agree or disagree with the
21 conclusions expressed in, in those reports?
22      A. It's evident that the patient does
23 have some continued deficits in left lower
24 extremity and -- when he was seen six months
25 after his second knee surgery by Dr. Larkin. In

Page 28

1  other words, his functional capacity evaluation
2  was done about six months after the surgery by
3  Dr. Larkin. This FCE was available in June
4  2001.
5       Q. And how does that compare with your
6  assessment of the patient in June of 2003?
7       MR. HARRINGTON: Objection.
8       A. This man's come a long way since --
9  in the two years since he had that functional
10 capacity evaluation. It's also evident that the
11 patient did not go back to Dr. Larkin
12 immediately after this functional capacity
13 evaluation. He's not even sure who even
14 assessed it or reviewed it. There's no record
15 of any change or recommendations by Dr. Larkin
16 in terms of medical record in terms of the
17 results of this functional capacity evaluation.
18      Q. Dr. Bender, in your opinion does
19 Mr. King currently need ongoing medical
20 attention?
21      A. No, sir.
22      Q. Thank you, Doctor. I believe
23 that's all the questions I have.
24      CROSS-EXAMINATION
25 BY MR. HARRINGTON:

Page 29

1       Q. Doctor, my name's Patrick
2  Harrington, one of the attorneys representing
3  Mr. King. I have some questions for you today.
4       Briefly, however, Mr. O'Connell, in
5  his direct examination, asked you to state any
6  opinions you would have in this case based upon
7  a reasonable degree of medical certainty and I
8  would ask that you afford me that same courtesy.
9  All right, Doctor?
10      A. Yes, sir.
11      Q. I understand that of the
12 approximate six times per year which you've
13 provided medical legal evaluations for Mr.
14 O'Connell or his firm each of those examinations
15 were on the behalf of the defendant in the case;
16 is that correct?
17      A. Well, I've also evaluated people
18 who were represented by their firm so I've given
19 them opinions contrary to the members of the
20 firms, as well.
21      Q. Okay. And on an annual basis you
22 perform approximately 300 medical legal
23 examinations; is that correct?
24      A. Yes, sir.
25      Q. Vast majority of those are

LITIGATION SUPPORT SERVICES, INC.
Cincinnati, Ohio (513) 241-5605 / Dayton, Ohio (937) 224-1990

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI

| | | |
|---|---|---|
| STEVEN D. KING, | ) | |
| | ) | |
| Plaintiff, | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| -vs- | ) | CASE NO.: C-1-01-802 |
| | ) | |
| CSX TRANSPORTATION, INC. | ) | Judge Herman J. Weber |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

This cause coming to be heard on Plaintiff's Motion to Continue and the Court being sufficiently advised, it is hereby ordered:

The trial date of December 1, 2003 and final pretrial conference of November 19, 2003 are hereby stricken.

This Trial in the above styled cause is RESCHEDULED to the _____, 2004 trial term. Counsel shall file an amendment to their Joint Pretrial Order on or before _____, 2004.

IT IS SO ORDERED.

                _____
                Herman J. Weber, Senior Judge
                United States District Court